596 S.E.2d 896 (2004)
In the Matter of V.L.B.
No. COA03-766.
Court of Appeals of North Carolina.
June 15, 2004.
Stephen M. Schoeberle, Morganton, for petitioner-appellee Burke County Department of Social Services.
Nancy Einstein Triebert, Morganton, Attorney Advocate.
Nancy R. Gaines, Salisbury, for respondent-appellant.
Juleigh Sitton, Morganton, Guardian ad Litem.
LEVINSON, Judge.
Respondent mother (Angel Babcock) appeals from a permanency planning order making adoption the permanent plan for her minor child (hereinafter V.L.B.).
On 17 June 2002 the Burke County Department of Social Services (DSS) filed a Juvenile Petition alleging neglect. On 19 August 2002, the trial court entered an order, based upon the stipulations of the parties, that (1) the allegations of neglect in the petition were true, and (2) V.L.B. was a dependent juvenile within the meaning of N.C.G.S. § 7B-101(9).[1] The court continued disposition until psychological evaluations could be obtained. In the meantime, custody remained with DSS, as the court concluded reunification was not in the best interest of V.L.B. at that time. On 6 January 2003, following a permanency planning hearing, *897 the trial court entered an order setting adoption as the permanent plan for V.L.B. Respondent gave notice of appeal from this 6 January order, assigning as error the trial court's failure to make adequate findings of fact pursuant to N.C.G.S. § 7B-907.
On 29 September 2003 the trial court entered an order terminating respondent-mother's parental rights over V.L.B. We grant the motions filed by DSS and the attorney advocate to dismiss this appeal as moot.
In determining whether an appeal should be dismissed as moot, this Court has held:
A case is moot when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy. Further, whenever, during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain or proceed with a cause merely to determine abstract propositions of law.
In re Stratton, 159 N.C.App. 461, 463, 583 S.E.2d 323, 324, appeal dismissed, 357 N.C. 506, 588 S.E.2d 472 (2003) (internal quotation marks and citations omitted).
In Stratton, the respondent appealed an adjudication of neglect and dependency alleging errors arising from conduct during the adjudication hearing as well as insufficiency of the evidence. While the appeal was pending, the trial court entered a termination of parental rights (TPR) order. This Court took judicial notice of the TPR order and dismissed the appeal as moot. This Court held, inter alia, that the issues raised on appeal had been rendered "academic" by the subsequent TPR order. This Court reasoned that the findings in the adjudication ordered were superceded by the subsequent findings in the TPR order, and that the trial court had made an "entirely independent" determination of neglect. Id. at 463, 583 S.E.2d at 324.
The purposes associated with a permanency review hearing are "to develop a plan to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C.G.S. § 7B-907(a) (2003). These hearings are generally held "within 12 months after the date of the initial order removing custody" and every six months thereafter. Id. The criteria set forth in N.C.G.S. § 7B-907(b) (2003) are designed to ensure that courts adhere to the purposes of the statute. Significantly, we observe there is little alignment between the criteria set forth in G.S. § 7B-907(b), and the grounds for termination of parental rights set forth in N.C.G.S. § 7B-1111(a) (2003).
The 29 September 2003 TPR order addressing respondent's parental rights over V.L.B. is based upon G.S. § 7B-1111(a)(9) (termination of parental rights as to other children), and does not rely on the permanency planning order that is the subject of this appeal.[2] Indeed, the court, after hearing the testimony of witnesses and admitting the entire "court file" into evidence, made independent findings and conclusions that do not rely on the permanency planning order. In the present case, like Stratton, any findings in the permanency planning order that are also in the TPR order are superceded by the latter. Accord In re N.B., ___ N.C.App. ___, ___, 592 S.E.2d 597, ___ (2004). These circumstances, together with (1) our observation concerning the lack of a direct relationship between the criteria in G.S. § 7B-907(b) and the grounds in G.S. § 7B-1111(a), and (2) our reliance on the principles in Stratton, lead us to an inescapable conclusion that the present appeal has become moot.
In relying on Stratton and N.B., we recognize that we are necessarily failing to follow the reasoning and holding set forth in In re Hopkins, ___ N.C.App. ___, ___, 592 S.E.2d 22, ___ (2004). We observe that, although there has been some recent effort to reconcile these two lines of cases, In re J.C.S. and R.D.S., ___ N.C.App. ___, ___, 595 S.E.2d 155, ___ (2004), the lines are, in practice, irreconcilable.
Like our colleague in the dissent, we appreciate the importance of providing review *898 to orders of the trial division. However, we fail to discern how any decision related to the present appeal can have any practical effect on the juvenile or the respondents. Moreover, we have less confidence than the dissent in this Court's practical ability to "deny review to fruitless appeals" or "sanction ... recalcitrant attorneys and parties that file them." Likewise, this Court has not generally resolved juvenile appeals within a time frame that would enable county social services agencies to comport with their statutory duty to file petitions for termination of parental rights within certain time frames prescribed in N.C.G.S. § 7B-907(e) (2003) (requiring petition to be filed within 60 calendar days from the date of permanency planning hearing). The dissent, like Hopkins, fails to account for this clear legislative mandate and could give parents the power to indefinitely suspend entry of a TPR by taking repeated appeals.
Even if this Court were to reverse the trial court's order making adoption the permanent plan for V.L.B., this would have no practical effect on the existing controversy.
Dismissed as moot.
Judge THORNBURG concurs.
Judge TIMMONS-GOODSON dissents.
TIMMONS-GOODSON, Judge, dissenting.
Because I conclude the trial court did not have jurisdiction over DSS's petition to terminate parental rights while respondent's appeal of the permanency planning order was pending before this Court, I respectfully dissent.
In reaching its conclusion, the majority ignores this Court's decision in a case factually similar to the instant case. In In re Hopkins, ___ N.C.App. ___, 592 S.E.2d 22 (2004), the trial court held a permanency planning hearing on 29 November 2001 and entered an order 7 December 2001, concluding that the permanent plan for the minor child should be adoption. The respondent-father appealed the trial court's order to this Court. While that appeal was still pending, the trial court held a hearing on a TPR petition filed by DSS, and entered an order terminating respondent-father's parental rights. On appeal, this Court held that "the trial court was without jurisdiction to enter the order terminating respondent-father's parental rights," and we vacated the portion of the TPR order terminating the respondent-father's parental rights. Id. at ___, 592 S.E.2d at 25. I conclude the reasoning of Hopkins applies to the instant case.
As we noted in Hopkins, the Juvenile Code requires that "review of any final order of the court in a juvenile matter ... be before the Court of Appeals." N.C. Gen. Stat. § 7B-1001 (2003); Hopkins, ___ N.C.App. at ___, 592 S.E.2d at 24. A final order includes "[a]ny order modifying custodial rights." N.C. Gen.Stat. § 7B-1001(4). Thus, "[p]ending disposition of such an appeal, the trial court's authority over the juvenile is statutorily limited to entry of `a temporary order affecting the custody or placement of the juvenile as the court finds to be in the best interests of the juvenile or the State.'" Hopkins, ___ N.C.App. at ___, 592 S.E.2d at 24-25 (quoting N.C. Gen. Stat. § 7B-1003 (2003)) (emphasis in original). An order terminating parental rights "is, by its very nature, a permanent rather than a temporary order affecting the juvenile's custody or placement." Hopkins, ___ N.C.App. at ___, 592 S.E.2d at 25 (emphasis in original); see N.C. Gen.Stat. § 7B-1100(2) (2003) ("It is the further purpose of this Article [11, governing termination of parental rights] to recognize the necessity for any juvenile to have a permanent plan of care at the earliest possible age[.]"). Therefore, where a trial court enters an order terminating a parent's rights while that parent's appeal is still pending, the trial court exceeds the authority expressly granted to it under N.C. Gen.Stat. § 7B-1103 and is without jurisdiction to enter the order. Hopkins, ___ N.C.App. at ___, 592 S.E.2d at 25.
The majority relies upon this Court's opinion in In re Stratton, 159 N.C.App. 461, 583 S.E.2d 323, appeal dismissed, 357 N.C. 506, 588 S.E.2d 472 (2003), to support its conclusion that the instant appeal is moot. While the TPR order in that case as well as the TPR order in the instant case may have been based upon evidence "entirely independent" from the original order appealed from, I disagree that issuance of a TPR order renders *899 the issues raised on appeal "academic." Id. at 463, 583 S.E.2d at 324. The North Carolina Court of Appeals is an error-correcting tribunal, charged with addressing and adjusting any errors of law committed by the courts below. In the instant case, the majority's conclusion allows a lower court to remove an appeal from this Court's review by issuing a TPR order while the appeal is still pending. I do not believe it was the intent of the legislature either in enacting the Juvenile Code or in creating this state's court systems to transform the trial court into its own appellate court, with the power to override its own determinations and errors without review from a higher court. Nor do I believe this Court should be so quick to dismiss as "academic" those errors that are later "corrected" by the very source from which the errors originate.
I recognize that, when read to its extreme, Hopkins allows a respondent to continuously appeal permanency planning orders every six months, thereby burdening this Court with unnecessary appeals and suspending the disposition of custody suits. However, I am confident not only in this Court's ability to deny review to fruitless appeals, but also in its ability to sanction the recalcitrant attorneys and parties that file them. See N.C.R.App. P. 34 (2004). Furthermore, I believe the burdens of appellate review in such matters would be greatly outweighed by the benefits created in ensuring that the processes used to determine the custodial status of minor children are error-free.
For the foregoing reasons, I conclude the judgment terminating respondent's parental rights does not render her appeal of the permanency planning order moot. Thus, I believe this Court should reach the merits of respondent's appeal. Therefore, I respectfully dissent.
NOTES
[1] This appeal does not concern the variance between the allegations of neglect in the petition and the court's conclusion of dependency.
[2] For example, while one of the findings of fact in the permanency review order on appeal is that respondent "had her parental rights to 5 prior children terminated[,]" the TPR order reveals respondent admitted the same in a responsive pleading to the TPR motion.